# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. AIDAN FORSYTH, <br><br> *Plaintiff-Relator,* <br><br> v. <br><br> HERB CHAMBERS 395 BROADWAY INC., JENNINGS ROAD MANAGEMENT CORP., HERB CHAMBERS 1168 INC., HERB CHAMBERS CAMBRIDGE STREET INC., HERB CHAMBERS 1172 INC., HERB CHAMBERS OF WAYLAND INC., DAVE DINGER FORD INC. and HERB CHAMBERS OF MILLBURY INC., <br><br> *Defendants.* | Civil Action No. _____ <br><br> Hon. _____ <br><br> **QUI TAM COMPLAINT** <br><br> **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** <br><br> **JURY TRIAL DEMANDED** |

On behalf of the United States of America (the "United States" or the "Government"), Plaintiff and Relator Aidan Forsyth ("Relator") files this *qui tam* action against Herb Chambers 395 Broadway Inc. ("HC395"), Jennings Road Management Corp. ("JRMC"), Herb Chambers 1168 Inc. ("HC1168"), Herb Chambers Cambridge Street Inc. ("HCCSI"), Herb Chambers 1172 Inc. (" HC1172"), Herb Chambers of Wayland Inc. ("HCWI"), Dave Dinger Ford Inc. ("DDFI") and Herb Chambers of Millbury Inc. ("HCM") (collectively, the "Herb Chambers Companies" ("HCC") or "Defendants"), and alleges as follows:

## INTRODUCTION

1.       This is an action to recover treble damages, civil penalties and all other remedies on behalf of the United States of America in connection with the Defendants' materially false and

fraudulent applications to the Government for loans under the Paycheck Protection Program ("PPP") in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA").

2.      Pursuant to the FCA, Relator seeks to recover, on behalf of the United States of America, damages and civil penalties arising from false or fraudulent claims for payment that Defendants submitted or caused to be submitted to the Federal Government-funded and/or subsidized PPP loan programs.

## SUMMARY OF ALLEGATIONS

3.      The Herb Chambers Companies ("HCC") family of businesses was founded in 1985 in New London, CT by Herbert G. Chambers and today, HCC operates approximately 60 car dealerships in the Boston metropolitan area and throughout New England.

4.      At all times relevant to this action, Mr. Chambers was president and treasurer of each of the HCC entities.

5.      James Duchesneau was the CFO of HCC and had held this position since August 2011.

6.      Early in the PPP loan program, and expressly "to preserve the limited resources available to the PPP program," the SBA instituted a limitation for businesses that were part of a single corporate group, permitting them to receive no more than $20,000,000.00 of PPP loans in the aggregate. The SBA required any applicant or recipient of a PPP loan to withdraw or request cancellation of any pending application loan not in excess of the cap and warned that borrowers who failed to comply would be considered to have used loan proceeds for unauthorized purposes and such loans would not be forgiven. Early in 2021, the SBA placed a $4,000,000 cap on second-draw PPP loans to a single corporate group, likewise to "promote the availability of PPP loans to the largest possible number of borrowers[.]"

7.     Twenty-nine HCC entities received a total of $30,253,955.90 of forgiven first-draw PPP loans, however, $7,659,391.13 exceeded the Small Business Administration ("SBA") $20,000,000.00 loan limit for affiliated corporate entities.

8.     Twenty-one HCC entities received their first-draw funding properly and timely through Bank of America ("BOA").

9.     However, upon information and belief, eight HCC entities, HCWI, HC1172, DDFI, HC395, HCCSI, HC1168, JRMC, and HCM (the "Eight Entities") attempted to avoid the $20 million limit  by canceling their original first-draw PPP loans and applying for another first-draw PPP loan.

10.     In or about July 2020, each of the Eight Entities applied for their second first-draw loans, well after the April 30, 2020, effective date for the SBA's $20 million loan limit.

11.     Upon information and belief, Mr. Chambers and/or Mr. Duchesneau prepared or caused to be prepared the loan applications for each of the Eight entities.

12.     The applications required the applicants' designated representatives to certify that the Eight Entities were eligible businesses under SBA rules.  The applications also required the representative to acknowledge that the information submitted was material to the Government, to certify that it was true and correct, and to acknowledge that submitting a materially false application would violate Federal law.

13.     In an effort to circumvent the $20 million corporate group cap, the Eight Entities' representatives falsely and fraudulently certified that the businesses were eligible businesses under SBA rules, including that they had no (or a limited number of) affiliated businesses.  They also expressly acknowledged that this was a material question, and that submitting a materially false application would violate federal law.

3

14.     In reliance upon the Eight Entities' false statements and certifications, U.S. Bank extended PPP loans to the Eight Entities in an amount totaling $7,659,391.13.

15.     In or about May 2021, the Eight Entities sought and obtained forgiveness of their PPP loans.

16.     The PPP Loan Forgiveness Application Form required the applicant's representative to certify that they had complied with all requirements in the PPP Rules provided under the Small Business Act, the PPP interim final rules, and guidance issued by SBA through the date of the forgiveness application. The application also required the representative to certify that all information provided was "true and correct in all material respects" and to acknowledge that "knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan" was punishable under Federal law with imprisonment and/or fines.

17.     Upon information and belief, the Eight Entities' representatives falsely and fraudulently certified that the businesses had all complied with the SBA's PPP loan requirements and were therefore entitled to loan forgiveness.

18.     Had Defendants been truthful in their statements and certifications to U.S. Bank, *i.e.* that the Eight Entities were owned and operated by HCC, along with 21 other entities that had already received PPP loan approval in an amount that already reached the SBA's $20 million loan limit, the loans never would have been issued.

19.     Relator files this *qui tam* lawsuit to enable the Government to recover from Defendants the SBA-guaranteed, granted and forgiven monies that were provided to Defendants as the result of their wrongdoing, as well as to recover treble damages and/or penalties.

## JURISDICTION, VENUE, AND SPECIAL REQUIREMENTS

20.     This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, under 31 U.S.C. § 3729 of the False Claims Act, and under 28 U.S.C. § 1345, which provides the United States District Courts with original jurisdiction over all civil actions commenced by the United States of America.

21.     In addition, the FCA specifically confers jurisdiction upon the United States District Courts under 31 U.S.C. § 3732. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because the Defendants at all relevant times conducted business in this District, maintained places of business in this District, and/or submitted PPP Loan applications and requests for loan forgiveness from this District.

22.     Venue is proper in this District under 31 U.S.C. § 3732(a) because certain of the acts complained of herein occurred in this District.

23.     In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has filed been filed *in camera* and will remain under seal for a period of at least 60 days, and shall not be served on the Defendants until the Court so orders.

24.     Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and a written disclosure of substantially all material evidence and material information in his possession contemporaneous with the filing of the Complaint. Relator has complied with this provision by serving copies of the Complaint and such disclosure upon the Honorable Joshua S. Levy, United States Attorney for the District of Massachusetts, and upon the Honorable Merrick B. Garland, Attorney General of the United States.

25.     Relator is not aware that the allegations in this Complaint have been publicly disclosed. In any event, this Court has jurisdiction under 31 U.S.C. § 3730(e)(4) because the

Relator is an "original source" since he has voluntarily provided his information to Government before filing this Complaint, and has knowledge which is both direct and independent of, and materially adds to, any public disclosures to the extent they may exist.

## PARTIES

26.    Plaintiff/Relator Aidan Forsyth resides at 55 West 8th Street, New York, NY 10011.

27.    The Herb Chambers Companies is headquartered at 259 McGrath Highway in Somerville, Massachusetts 02143 and operates 60 car dealership locations. HCC is owned by Mr. Chambers.

28.    Defendant Herb Chambers of Wayland Inc. was incorporated in the State of Massachusetts on or about January 18, 2007.  Its principal place of business is located at 533 Boston Post Road, Wayland, MA 01778.  HCWI is in the business of motor vehicle sales and service of motor vehicles.

29.    Defendant Herb Chambers 1172, Inc. was incorporated in the State of Massachusetts on or about March 4, 1999. Its principal place of business is located at 1168 Commonwealth Avenue, Boston, MA 02115. HC1172 is in the business of motor vehicle sales and service of motor vehicles.

30.    Defendant Dave Dinger Ford, Inc. was incorporated in the State of Massachusetts on or about August 8, 1966. Its principal place of business is located at 75 Granite Street, Braintree, MA 02184. DDFI is in the business of motor vehicle sales and service of motor vehicles.

31.    Defendant Herb Chambers 395 Broadway, Inc. was incorporated in the State of Massachusetts on or about October 9, 2012. Its principal place of business is located at 395 Broadway, Lynnfield, MA 01940. HC395 is in the business of motor vehicle sales and service of motor vehicles.

32.    Defendant Herb Chambers Cambridge Street, Inc. was incorporated in the State of Massachusetts on or about August 9, 2006. Its principal place of business is located at 62 Cambridge Street, Burlington, MA 01803. HCCSI is in the business of motor vehicle sales and service of motor vehicles.

33.    Defendant Herb Chambers 1168, Inc. was incorporated in the State of Massachusetts on or about March 4, 1999. Its principal place of business is located at 32 Brighton Avenue, Boston, MA 02134. HC1168 is in the business of motor vehicle sales and service of motor vehicles.

34.    Defendant Jennings Road Management Corporation was incorporated in the State of Massachusetts on or about May 28, 1992 and in the State of Connecticut on April 9, 1986. Its principal place of business is located at 47 Eastern Boulevard, Glastonbury, CT 06033. JRMC is in the business of motor vehicle sales and service of motor vehicles.

35.    Defendant Herb Chambers of Millbury Inc. was incorporated in the State of Massachusetts on or about February 9, 1998. Its principal place of business is located at 2 Latti Farm Road, Millbury, MA 01527. HCM is in the business of motor vehicle sales and service.

36.    Herbert G. Chambers is an individual who resides at 317 Ferry Road, Old Lyme, Connecticut 06371. Mr. Chambers is the owner and President of HCC.

37.    James Duchesneau is an individual who resides at 304 Old Farms Road, South Glastonbury, Connecticut 06073. Mr. Duchesneau is the CFO of HCC and has held this position since 2011.

## GOVERNING LAWS, REGULATIONS, AND CODES OF CONDUCT
### The False Claims Act

38.    Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act.  The 1986 amendments enhanced the Government's ability to

recover losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

39.     The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval"; or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim"; or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(A), (B), (G). Any person found to have violated these provisions or conspired to have violated these provisions is liable for a civil penalty of at least $13,946.00 and up to $27,894.00 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 88 FR 5776, Feb. 12, 2024).

40.     The FCA defines the terms "knowing" and "knowingly" to mean that a person (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or acts "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). The statute provides that "no proof of specific intent to defraud" is required. 31 U.S.C. § 3729(b)(1)(B).

41.     The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program

8

or interest, and if the United States Government – (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

42.      The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on any Defendant. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

43.      In this action, and under well-established precedent, the false and fraudulent nature of Defendants' conduct is informed or measured by their violation of, or failure to comply with, certain statutes and regulations material to the submission of applications for government-subsidized and/or issued small business loans.

### The CARES Act Authorizes Paycheck Protection Program Loans and Economic Injury Disaster Loans and Grants

44.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116-136) (the "CARES Act" or the "Act") was enacted in March 2020 to provide emergency financial assistance to individuals and businesses affected by the COVID-19 pandemic. The Act provided the federal Small Business Administration ("SBA") with funding and authority to modify existing loan programs and establish a new loan program to assist small businesses adversely affected by the pandemic.

45.      Section 1102 of the CARES Act authorized the SBA to guarantee up to $349 billion in forgivable 7(a) loans to small businesses for job retention and other expenses. This program was called the Paycheck Protection Program ("PPP"). In April 2020, Congress authorized over

$300 billion to additionally fund the PPP. In June 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142) was enacted which changed certain provisions of the PPP, including provisions relating to the maturity of loans, the deferral of loan payments, and loan forgiveness.

46. Under the PPP, eligible businesses could obtain *one* SBA-guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

47. Early in the PPP loan program, the SBA instituted a limitation for businesses that were part of a single corporate group, permitting them to receive no more than $20,000,000.00 of PPP loans in the aggregate. The limitation defined businesses that were part of a "single corporate group" as those that were "majority owned, directly or indirectly, by a common parent." The limitation was effective for any loan that had not been fully disbursed as of April 30, 2020. *See* 85 Fed. Reg. 26324, 26325 (May 4, 2020).

48. The SBA specified that "[i]t is the responsibility of an applicant for a PPP loan to notify the lender if the applicant has applied for or received PP loans in excess of the amount permitted by this interim final rule and withdraw or request cancellation of any pending PPP loan application or approved PPP loan not in compliance with the limitation set forth in this rule." *Id.* The SBA warned that "[f]ailure by the applicant to do so will be regarded as a use of PPP loans for unauthorized purposes, and the loan will be not eligible for forgiveness." *Id.*

49. The SBA also instituted another limitation for businesses that were a part of a single corporate group, permitting them to receive no more than $4,000,000 of second-draw PPP loans in the aggregate. Similar to the first-draw loan cap, the SBA imposed this limitation to "promote

the availability of PPP loans to the largest possible number of borrowers[.]" The limitation defined businesses that were part of a "single corporate group" as those that were "majority owned, directly or indirectly, by a common parent." The limitation was effective for any loan that had not been fully disbursed as of January 12, 2021. See 86 Fed. Reg. 3712, 3715-16 (January 14, 2021).

50.     The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans.  To obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

51.     The borrower's authorized representative was required to certify, among other things, the business's average monthly payroll expenses and number of employees.  This information was used to calculate the amount of money the business was eligible to be loaned. The applicant also had to submit documentation showing payroll expenses, among other things.

52.     All versions of the PPP loan application required the authorized representative to certify that the applicant had not and would not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the SBA, not including the PPP second draw loans.

53.     All versions of the application further required the applicant's representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

54.     PPP loan applications were processed by participating financial institutions, which served as the lenders. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, were transmitted by the lender to the SBA in the course of processing the loan. SBA paid processing fees to lenders.

55.     Once a borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the participating lender, the lender submitted the application to SBA for an SBA loan number and after receiving that number it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

56.     A borrower was required to use PPP loan proceeds only for certain permissible expenses: payroll costs, interest on mortgages, rent and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expenses within a designated period (between eight and 24 weeks from receiving the proceeds) and uses at least 60% of the proceeds for payroll expenses.

57.     In December 2020, the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Pub. L. 116-260) extended and further funded the PPP loan program, and the SBA issued implementing rules. Among other things, if a first-draw loan borrower fully repaid the loan prior to December 27, 2020, and the loan had not been forgiven, the borrower could reapply for a second first-draw loan pursuant to the rules then applicable. *See* SBA Procedural Notice, Control No. 5000-20076 (Jan. 13, 2021). "The reapplication procedure depends on whether the Lender reported the loan to SBA as 'cancelled' or 'paid in full' as a result of the borrower's repayment before December 27, 2020." *Id.* at 3.

## SPECIFIC FRAUD ALLEGATIONS

58.     In the aggregate, the total value of PPP loans received by the 29 HCC entities well exceeded the SBA's $20,000,000.00 loan cap.

59.     Each of the 29 HCC-operated entities that applied for PPP loans, were owned entirely by Mr. Chambers, making Defendants part of a "single corporate group" that was limited by the $20 million cap as of April 30, 2020.

60.     Nonetheless, in total, the HCC entities received $30,253,955.90 in forgiven first-draw PPP loans, a portion of which was received after the April 30, 2020, effective date, because the Eight Entities, through false and fraudulent applications, intentionally circumvented the $20 million limit.

### To Circumvent the $20 Million Cap, HCWI Applies for and Receives a Second First-Draw PPP Loan, which is Later Forgiven

61.     On or about May 3, 2020, HCWI received a first-draw PPP Loan from Bank of America ("BOA"), a federally-insured financial institution and SBA participating lender based in Charlotte, North Carolina.

62.     On or about May 19, 2020, HCWI's first-draw PPP Loan was reported canceled. Upon information and belief, HCWI had repaid its loan in order to circumvent the SBA's $20 million cap.

63.     In or before July 2020, an authorized representative of HCWI prepared or caused to be prepared an SBA application for a second First-Draw PPP Loan (Form 2483-SD) on behalf of HCWI to U.S. Bank, a federally-insured financial institution and SBA participating lender based in Minneapolis, Minnesota.

13

64.     Upon information and belief, an authorized representative of HCWI prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that HCWI was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that the other Defendants were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

65.     Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.   Specifically, the representative falsely and fraudulently omitted to state that the other Defendants were affiliated businesses that shared common ownership.

66.     The application required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

67.     Upon information and belief, Mr. Chambers and/or Mr. Duchesneau executed HCWI's PPP loan application as the company's authorized representative, or caused another person to do so.

68.     Upon information and belief, the authorized representative applied for HCWI's second first-draw PPP Loan from U.S. Bank rather than BOA, as the other 21 HCC entities had, in an effort to avoid the SBA's $20 million corporate group loan cap.

14

69.     Upon information and belief, Mr. Chambers and/or Mr. Duchesneau falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

70.     In or before July 2020, Mr. Chambers and/or Mr. Duchesneau submitted or caused to be submitted HCWI's second first-draw PPP loan application to U.S. Bank.

71.     On or about July 23, 2020, in reliance on HCWI's materially false and fraudulent representations and certifications in the loan application, U.S. Bank issued PPP loan # 7473168103 in the amount of $491,732.00 (the "HCWI Loan").

72.     Upon information and belief, Mr. Chambers and/or Mr. Duchesneau prepared the PPP Loan Forgiveness Application Form, which contained a false and fraudulent certification that HCWI had complied with the SBA's PPP loan requirements and was therefore entitled to forgiveness of the HCWI Loan.

73.     On or about May 5, 2021, the HCWI Loan was forgiven in full, causing the United States to reimburse U.S. Bank for the full amount, which cost the Government at least $495,529.26.

**To Circumvent the $20 Million Cap,
HC1172 Applies for and Receives a Second
First-Draw PPP Loan, which is Later Forgiven**

74.     On or about May 2, 2020, HC1172 received a first-draw PPP Loan from BOA in the amount of $2,193,292.

75.     On or about May 19, 2020, BOA's first-draw PPP Loan was reported canceled. Upon information and belief, HC1172 had repaid its loan in order to circumvent the SBA's $20 million loan cap.

76.     In or before July 2020, an authorized representative of HC1172 prepared or caused to be prepared an SBA application for a second first-draw PPP Loan (Form 2483-SD) on behalf of HC1172 to U.S. Bank.

77.     Upon information and belief, an authorized representative of HC1172 prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that HC1172 was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that the other Defendants were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

78.     Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.  Specifically, the representative falsely and fraudulently omitted to state that the other Defendants were affiliated businesses that shared common ownership.

79.     The application required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

80.     Upon information and belief, Mr. Chambers and/or Mr. Duchesneau executed HC1172's PPP loan application as the company's authorized representative, or caused another person to do so.

16

81.     Upon information and belief, the authorized representative applied for HC1172's second first-draw PPP Loan from U.S. Bank rather than BOA, as the other 21 HCC entities had, in an effort to avoid the SBA's $20 million corporate group loan cap.

82.     Upon information and belief, Mr. Chambers and/or Mr. Duchesneau falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

83.     In or before July 2020, Mr. Chambers and/or Mr. Duchesneau submitted or caused to be submitted HC1172's second First-Draw PPP loan application to U.S. Bank.

84.     On or about July 23, 2020, in reliance on HC1172's materially false and fraudulent representations and certifications in the loan application, U.S. Bank issued PPP loan # 7465968107 in the amount of $1,850,000.00 (the "HC1172 Loan").

85.     Upon information and belief, Mr. Chambers and/or Mr. Duchesneau prepared the PPP Loan Forgiveness Application Form, which contained a false and fraudulent certification that HC1172 had complied with the SBA's PPP loan requirements and was therefore entitled to forgiveness of the HC1172 Loan.

86.     On or about May 5, 2021, the HC1172 Loan was forgiven in full, causing the United States to reimburse U.S. Bank for the full amount, which cost the Government at least $1,864,286.11.

**To Circumvent the $20 Million Cap,
DDFI Applies for and Receives a Second
First-Draw PPP Loan, which is Later Forgiven**

87.     On or about May 3, 2020, DDFI received a first-draw PPP Loan from BOA in the amount of $1,283,127.

88.     On or about May 19, 2020, DDFI's first-draw PPP Loan was reported canceled. Upon information and belief, DDFI had repaid its loan in order to circumvent the SBA's $20 million loan cap.

89.     In or before July 2020, an authorized representative of DDFI prepared or caused to be prepared an SBA application for a second first-draw PPP Loan (Form 2483-SD) on behalf of DDFI to U.S. Bank.

90.     Upon information and belief, an authorized representative of DDFI prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that DDFI was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that the other Defendants were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

91.     Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.   Specifically, the representative falsely and fraudulently omitted to state that the other Defendants were affiliated businesses that shared common ownership.

92.     The application required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting

documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

93.     Upon information and belief, Mr. Chambers and/or Mr. Duchesneau executed DDFI's PPP loan application as the company's authorized representative, or caused another person to do so.

94.     Upon information and belief, the authorized representative applied for DDFI's second first-draw PPP Loan from U.S. Bank rather than BOA, as the other 21 HCC entities had, in an effort to avoid the SBA's $20 million loan limit.

95.     Upon information and belief, Mr. Chambers and/or Mr. Duchesneau falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

96.     In or before July 2020, Mr. Chambers and/or Mr. Duchesneau submitted or caused to be submitted DDFI's second first-draw PPP loan application to U.S. Bank.

97.     On or about July 24, 2020, in reliance on DDFI's materially false and fraudulent representations and certifications in the loan application, U.S. Bank issued PPP loan # 7465968107 in the amount of $1,283,127.00 (the "DDFI Loan").

98.     Upon information and belief, Mr. Chambers and/or Mr. Duchesneau prepared the PPP Loan Forgiveness Application Form, which contained a false and fraudulent certification that DDFI had complied with the SBA's PPP loan requirements and was therefore entitled to forgiveness of the DDFI Loan.

99.     On or about May 5, 2021, the DDFI Loan was forgiven in full, causing the United States to reimburse U.S. Bank for the full amount, which cost the Government at least $1,292,999.95.

**To Circumvent the $20 Million Cap,
HC395 Applies for and Receives a Second
First-Draw PPP Loan, which is Later Forgiven**

100.     On or about April 16, 2020, HC395 applied for and received a first-draw PPP Loan from BOA in the amount of $339,525.00.

101.     On or about May 19, 2020, HC395's first-draw PPP Loan was reported canceled. Upon information and belief, HC395 had repaid its loan in order to circumvent the SBA's $20 million loan cap.

102.     In or before July 2020, an authorized representative of HC395 prepared or caused to be prepared an SBA application for a second first-draw PPP Loan (Form 2483-SD) on behalf of HC395 to U.S. Bank.

103.     Upon information and belief, an authorized representative of HC395 prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that HC395 was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that the other Defendants were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

104.     Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.   Specifically, the representative falsely and fraudulently

omitted to state that the other Corporate Defendants were affiliated businesses that shared common ownership.

105.    The application required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

106.    Upon information and belief, Mr. Chambers and/or Mr. Duchesneau executed HC395's PPP loan application as the company's authorized representative, or caused another person to do so.

107.    Upon information and belief, the authorized representative applied for HC395's second first-draw PPP Loan from U.S. Bank rather than BOA, as the other 21 HCC entities had, in an effort to avoid the SBA's $20 million loan cap.

108.    Upon information and belief, Mr. Chambers and/or Mr. Duchesneau falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

109.    In or before July 2020, Mr. Chambers and/or Mr. Duchesneau submitted or caused to be submitted HC395's second first-draw PPP loan application to U.S. Bank.

110.    On or about July 20, 2020, in reliance on HC395's materially false and fraudulent representations and certifications in the loan application, U.S. Bank issued PPP loan # 5922858106 in the amount of $335,475.00 (the "HC395 Loan").

111.    Upon information and belief, Mr. Chambers and/or Mr. Duchesneau prepared the PPP Loan Forgiveness Application Form, which contained a false and fraudulent certification that HC395 had complied with the SBA's PPP loan requirements and was therefore entitled to forgiveness of the HC395 Loan.

112.    On or about May 5, 2021, the HC395 Loan was forgiven in full, causing the United States to reimburse U.S. Bank for the full amount, which cost the Government at least $338,093.57.

### To Circumvent the $20 Million Cap, HCCSI Applies for and Receives a Second First-Draw PPP Loan, which is Later Forgiven

113.    On or about May 3, 2020, HCCSI applied for and received a first-draw PPP Loan from BOA for an amount of $1,378,347.00.

114.    On or about May 19, 2020, HCCSI's first-draw PPP Loan was reported canceled. Upon information and belief, HCCSI had repaid its loan in order to circumvent the SBA's $20 million loan cap.

115.    In or before July 2020, an authorized representative of HCCSI prepared or caused to be prepared an SBA application for a second first-draw PPP Loan (Form 2483-SD) on behalf of HCCSI to U.S. Bank.

116.    Upon information and belief, an authorized representative of HCCSI prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that HCCSI was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that the other Defendants were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

117.    Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other

22

business, or have common management with, any other business?" and/or failed to provide a complete list of this required information. Specifically, the representative falsely and fraudulently omitted to state that the other Defendants were affiliated businesses that shared common ownership.

118.    The application required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

119.    Upon information and belief, Mr. Chambers and/or Mr. Duchesneau executed HCCSI's PPP loan application as the company's authorized representative, or caused another person to do so.

120.    Upon information and belief, the authorized representative applied for HCCSI's second first-draw PPP Loan from U.S. Bank rather than BOA, as the other 21 HCC entities had, in an effort to avoid the SBA's $20 million loan cap.

121.    Upon information and belief, Mr. Chambers and/or Mr. Duchesneau falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

122.    In or before July 2020, Mr. Chambers and/or Mr. Duchesneau submitted or caused to be submitted HCCSI's second first-draw PPP loan application to U.S. Bank.

123.    On or about July 20, 2020, in reliance on HCCSI's materially false and fraudulent representations and certifications in the loan application, U.S. Bank issued PPP loan # 7462878109 in the amount of $1,378,342.00 (the "HCCSI Loan").

124.    Upon information and belief, Mr. Chambers and/or Mr. Duchesneau prepared the PPP Loan Forgiveness Application Form, which contained a false and fraudulent certification that HCCSI had complied with the SBA's PPP loan requirements and was therefore entitled to forgiveness of the HCCSI Loan.

125.    On or about May 5, 2021, the HCCSI Loan was forgiven in full, causing the United States to reimburse U.S. Bank for the full amount, which cost the Government at least $1,388,985.86.

### To Circumvent the $20 Million Cap, HC1168 Applies for and Receives a Second First-Draw PPP Loan, which is Later Forgiven

126.    On or about May 3, 2020, HC1168 applied for and received a first-draw PPP Loan from BOA for an amount of $718,867.00.

127.    On or about May 19, 2020, HC1168's First-draw PPP Loan was reported canceled. Upon information and belief, HC1168 had repaid its loan in order to circumvent the SBA's $20 million loan cap

128.    In or before July 2020, an authorized representative of HC1168 prepared or caused to be prepared an SBA application for a second first-draw PPP Loan (Form 2483-SD) on behalf of HC1168 to U.S. Bank.

129.    Upon information and belief, an authorized representative of HC1168 prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that HC1168 was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge

that the other Defendants were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

130.    Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.  Specifically, the representative falsely and fraudulently omitted to state that the other Defendants were affiliated businesses that shared common ownership.

131.    The application required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

132.    Upon information and belief, Mr. Chambers and/or Mr. Duchesneau executed HC1168's PPP loan application as the company's authorized representative, or caused another person to do so.

133.    Upon information and belief, the authorized representative applied for HC1168's second first-draw PPP Loan from U.S. Bank rather than BOA, as the other 21 HCC entities had, in an effort to avoid the SBA's $20 million loan cap.

134.    Upon information and belief, Mr. Chambers and/or Mr. Duchesneau falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material

respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

135.    In or before July 2020, Mr. Chambers and/or Mr. Duchesneau submitted or caused to be submitted HC1168's second first-draw PPP loan application to U.S. Bank.

136.    On or about July 23, 2020, in reliance on HC1168's materially false and fraudulent representations and certifications in the loan application, U.S. Bank issued PPP loan # 7423138107 in the amount of $718,865.00(the "HC1168 Loan").

137.    Upon information and belief, Mr. Chambers and/or Mr. Duchesneau prepared the PPP Loan Forgiveness Application Form, which contained a false and fraudulent certification that HC1168 had complied with the SBA's PPP loan requirements and was therefore entitled to forgiveness of the HC1168 Loan.

138.    On or about April 29, 2021, the HC1168 Loan was forgiven in full, causing the United States to reimburse U.S. Bank for the full amount, which cost the Government at least $724,296.42.

### To Circumvent the $20 Million Cap, JRMC Applies for and Receives a Second First-Draw PPP Loan, which is Later Forgiven

139.    On or about May 3, 2020, JRMC applied for and received a first-draw PPP Loan from BOA for an amount of $950,292.00.

140.    However, on or about May 19, 2020, JRMC's First-draw PPP Loan was reported canceled.  Upon information and belief, HC1172 had repaid its loan in order to circumvent the SBA's $20 million loan cap.

141.    In or before July 2020, an authorized representative of JRMC prepared or caused to be prepared an SBA application for a second first-draw PPP Loan (Form 2483-SD) on behalf of JRMC to U.S. Bank.

142.    Upon information and belief, an authorized representative of JRMC prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that JRMC was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that the other Defendants were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

143.    Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.   Specifically, the representative falsely and fraudulently omitted to state that the other Defendants were affiliated businesses that shared common ownership.

144.    The application required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

145.    Upon information and belief, Mr. Chambers and/or Mr. Duchesneau executed JRMC's PPP loan application as the company's authorized representative, or caused another person to do so.

146.    Upon information and belief, the authorized representative applied for JRMC's second first-draw PPP Loan from U.S. Bank rather than BOA, as the other 21 HCC entities had, in an effort to avoid the SBA's $20 million corporate group loan cap.

147.    Upon information and belief, Mr. Chambers and/or Mr. Duchesneau falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

148.    In or before July 2020, Mr. Chambers and/or Mr. Duchesneau submitted or caused to be submitted JRMC's second first-draw PPP loan application to U.S. Bank.

149.    On or about July 22, 2020, in reliance on JRMC's materially false and fraudulent representations and certifications in the loan application, U.S. Bank issued PPP loan # 6994078101 in the amount of $950,290.00 (the "JRMC Loan").

150.    Upon information and belief, Mr. Chambers and/or Mr. Duchesneau prepared the PPP Loan Forgiveness Application Form, which contained a false and fraudulent certification that JRMC had complied with the SBA's PPP loan requirements and was therefore entitled to forgiveness of the JRMC Loan.

151.    On or about June 11, 2021, the JRMC Loan was forgiven in full, causing the United States to reimburse U.S. Bank for the full amount, which cost the Government at least $958,631.43.

**To Circumvent the $20 Million Cap,
HCM Applies for and Receives a Second
First-Draw PPP Loan, which is Later Forgiven**

152.    On or about May 3, 2020, HCM applied for and received a first-draw PPP Loan from BOA for an amount of $591,997.00.

153.   On or about May 19, 2020, HCM's first-draw PPP Loan was reported canceled. Upon information and belief, HC1172 had repaid its loan in order to circumvent the SBA's $20 million loan cap

154.   In or before July 2020, an authorized representative of HCM prepared or caused to be prepared an SBA application for a second first-draw PPP Loan (Form 2483-SD) on behalf of HCM to U.S. Bank.

155.   Upon information and belief, an authorized representative of HCM prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that HCM was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that the other Defendants were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

156.   Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.   Specifically, the representative falsely and fraudulently omitted to state that the other Defendants were affiliated businesses that shared common ownership.

157.   The application required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

158.    Upon information and belief, Mr. Chambers and/or Mr. Duchesneau executed HCM's PPP loan application as the company's authorized representative, or caused another person to do so.

159.    Upon information and belief, the authorized representative applied for HCM's second first-draw PPP Loan from U.S. Bank rather than BOA, as the other 21 HCC entities had, in an effort to avoid the SBA's $20 million loan cap.

160.    Upon information and belief, Mr. Chambers and/or Mr. Duchesneau falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

161.    In or before July 2020, Mr. Chambers and/or Mr. Duchesneau submitted or caused to be submitted HCM's second first-draw PPP loan application to U.S. Bank.

162.    On or about July 23, 2020, in reliance on HCM's materially false and fraudulent representations and certifications in the loan application, U.S. Bank issued PPP loan # 7469908108 in the amount of $591,997.00 (the "HCM Loan").

163.    Upon information and belief, Mr. Chambers and/or Mr. Duchesneau prepared the PPP Loan Forgiveness Application Form, which contained a false and fraudulent certification that HCM had complied with the SBA's PPP loan requirements and was therefore entitled to forgiveness of the HCM Loan.

164.    On or about May 5, 2021, the HCM Loan was forgiven in full, causing the United States to reimburse U.S. Bank for the full amount, which cost the Government at least $596,568.53.

## THE GOVERNMENT HAS BEEN DAMAGED AS A RESULT OF DEFENDANTS' CONDUCT

165.    Defendants' materially false statements have caused the federal government to be defrauded of taxpayer funds in the approximate amount of $7,659,391.13.

## CLAIMS FOR RELIEF

## COUNT I

False Claims Act:
Presenting or Causing to be Presented False and Fraudulent Claims
U.S.C. § 3729(a)(1)(A)

166.    Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

167.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly presented, and caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

## COUNT II

False Claims Act:
Making or Using False
Records or Statement to Cause Claims to be Paid
31 U.S.C. § 3729(a)(1)(B)

168.    Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

169.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly made, used, or caused to be made or used, false records or statements – *i.e.*, the false representations made or caused to be made by Defendants – material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B).

## COUNT III

False Claims Act: Conspiracy
31 U.S.C. § 3729(a)(1)(C)

170.     Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

171.     As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants conspired with and among each other, and with others, to make or present false or fraudulent claims, and performed one or more overt acts to effect the submission and cause the payment of false or fraudulent claims.

### DEMANDS FOR RELIEF

**WHEREFORE**, Relator, on behalf of the United States Government, demands judgment against the Defendants, ordering that:

A.     That Defendants be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, *et seq.*;

B.     That judgment be entered in Relator's favor and against Defendants in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of not less than $13,946.00 and up to $27,894.00 per claim as provided by 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 88 FR 5776, Feb. 12, 2024), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

C.     That Defendants be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

32

D.      That judgment be granted for Relator against Defendants for all costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator in the prosecution of this suit; and

E.      That Relator be granted such other and further relief as the Court deems just and proper.

## TRIAL BY JURY

Relator hereby demands a trial by jury as to all issues.

DATED:  May 2, 2024

**NYSTROM BECKMAN & PARIS LLP**

/s/ Christine M. Kingston
William C. Nystrom (#559656)
Christine M. Kingston (#682962)
One Marina Park Drive, 15th Floor
Boston, MA 02210
(617) 778-9100
wnystrom@nbparis.com
ckingston@nbparis.com

**SPIRO HARRISON & NELSON**

Eric H. Jaso (*pro hac vice pending*)
363 Bloomfield Avenue
Second Floor
Montclair, NJ 07074
(973) 232-0881
ejaso@spiroharrison.com

*Attorneys for Relator*

33